UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JENAL CAMACHO and JUAN CAMACHO,

                    Plaintiffs,

       -against-                                 **FIRST AMENDED COMPLAINT**

THE CITY OF NEW YORK,                       23 CV 10216 (JGK)
ERIC MILLER,
PETER WONG,
ARTHUR MCDONNELL,
ESTRELLA CESPEDES,
ANZOR ZAK,
JASON PULVER,
THOMAS CUCCINIELLO,
FRANK ZAPPULLA,
SHEDLER JEANBAPTISTE,
DALMIN VASQUEZ,
KEVIN DWYER,
ROBERT TRAVIS,
THOMAS MISERANDINO,
COSTANTINO BARBERIS,
GEORGE AZIZE,
BRIAN KOVARIK.

                    Defendants.
------------------------------------------------------------------------X

        Plaintiffs, JENAL CAMACHO and JUAN CAMACHO by their attorney, Vik Pawar, Esq., complaining of the defendants respectfully alleges, upon information and belief:

        1.     Plaintiffs JENAL CAMACHO and JUAN CAMACHO are residents of the Bronx, County of Bronx, and State of New York.

        2.     Defendant City of New York ("City") is a municipal corporation who oversees

the NYPD.

3. The named Individual Defendants in the caption are/were NYPD officers at the time of the incident.[1]

4. On October 6, 2021, at approximately 6 a.m., plaintiffs were inside their home when they heard a commotion outside their front door at their home.

5. Before they could ascertain what transpired, individual defendants busted down their door and entered their home.

6. Defendants Miller, Wong and McDonnell broke down the door and entered the home with assault rifles pointed at the two plaintiffs. Other unknown named defendants also entered the home and pointed their guns at both plaintiffs.

7. Plaintiffs lived in their home with a small chihuahua and were not engaged in any illegal activities,

8. These defendants knew that there was no need to point assault rifles at the plaintiffs because they posed no threats.

9. The entry was done pursuant to a search warrant which was obtained without any probable cause or based on any reliable information that contraband was present in the plaintiffs' home.

10. The individual defendants threw plaintiffs on the floor and ransacked their apartment. They threw clothes/items all over the place, broke furniture, opened and raided the cabinets and pantries in a failed effort to locate drugs and guns.

---

[1] Unless otherwise noted, the term individual defendants would be referred to individual acts because their identity cannot be ascertained from the body worn camera ("BWC") and in absence of additional discovery.

11. Plaintiff Jenal was dragged into the bedroom and defendant Estrella Cespedes forcibly groped her looking for "guns and drugs".

12. The individual defendants then took plaintiffs into the living room and handcuffed them even though they did not pose any threats to the armed individual defendants.

13. The individual defendants then asked plaintiff Jenal what was inside an urn looking box, plaintiff Jenal told them not to touch it because it contained her mother and sister's ashes. However, without any regard to the sentimental nature of the box, the defendants threw it on the floor scattering the ashes even though they informed the plaintiffs that it would be secured.

14. All the while both plaintiffs were handcuffed and even though plaintiff Jenal stated that her wrists, legs and shoulders were really hurting, the individual defendants did nothing to loosen the handcuffs.

15. The defendants destroyed everything inside their apartment and even though Both plaintiffs were only partially clothed, they were led outside their apartment in view of their neighbors while K-9 units continued to search for supposed contraband.

16. At numerus times, the defendants turned off their BWC and it was difficult to ascertain their version that "nothing happened" when it clearly contradicts plaintiffs' version.

17. In addition, even though it was made clear that the defendants got the wrong apartment, they continued to abuse the two plaintiffs under the guise of "probable cause" for four hours. They discussed amongst themselves that they possibly had the wrong

location but they continued to rampage the apartment. Plaintiffs also informed the defendants of the possibility that they had the wrong apartment, but defendants simply did not care.

18. Both innocent plaintiffs were treated like animals even after the defendants knew they were not the intended target. Their bodily and personal sanctity and to be free from aggressive search from the NYPD were evidentiality violated and face the possibility of eviction.

19. After more than 4 hours of this ordeal, the defendants simply said sorry for the inconvenience and left.

20. Plaintiffs suffered constitutional injuries including physical and emotional trauma from the ordeal.

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Seizure/Excessive Force/Due Process Violation)

21. Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

22. Defendants unlawfully entered plaintiff's apartment, seized them and used excessive force against plaintiffs and destroyed their belongings as outlined in the complaint.

23. Plaintiff Jenal's shoulder was twisted and turned including her legs and she suffered pain and defendant did not do anything to ease her pain.

24. In addition, one of the defendants kept flashing his flash lights at plaintiff Jenal even after she informed him that she was epileptic and could possibly get a seizure.

25. As a result of defendants' conduct plaintiffs suffered constitutional injuries.

## AS AND FOR A SECOND CAUSE OF ACTION
(Municipal Liability against the CITY)

26. Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

27. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

28. The aforementioned customs, usages, and practices of the City included, but were not limited to, arresting, assaulting individuals suspected of crimes without due process. In addition, the City engaged in a custom or practice of inadequate screening, hiring, retaining, training, disciplining and supervising its employees, which was the moving force behind the violation of Plaintiff's rights as described herein.

29. The CITY is aware that the individual defendants have engaged in unconstitutional conduct on prior occasions and needed adequate discipline or training to prevent further constitutional abuses. For example, among the named defendants and over a decade these defendants have faced over 50 allegations of misconduct. Allegations that are similar to the ones outlined in this complaint. Yet the CITY did nothing and that amounts to deliberate indifference because these defendants have faced similar situations prior to the incident outlined in the complaint and once again when faced with those events, they acted unlawfully violating the constitutional rights of individuals such as the plaintiffs.

30. The CITY has provided inadequate training when individual such as the named

defendants apply for search warrant and rely on unreliable confidential informants when requesting a search warrant. The City has been aware of these defective practices through various lawsuits noted below within the last 15 years and some as recently as few years back: *Delgado v. City*, *Rodriguez v. City*, *Merriweather v. City*, *Hollins v. City*, *Calderon v. City*, *Murchison-Allman v. City*, *Cruz v. City*, *Pollack v. Rinaldi*, *Wilson v. City*, *Speights v. City*, *Nixon v. City*, *Hedges v. City*, *McClary v. City*, *Summerlin v. City*, *Contreras v. City*, *Cornand v. City*, *Turner v. City*, *Jones v. City*, *Featherstone v. City, Robinson v. City.*[2]

31. The lack of training has led to innocent City Residents who have been victimized by NYPD's conduct because the search warrant produced nothing, wrong apartment was searched, no probable cause for warrant, unreliable CI, failure to investigate prior to ruining City Residents lives. The City is fully aware that their NYPD employees would confront a situation such as the ones described in this complaint but have failed to address the situation which has led and directly caused the inadequate training leading to the violation of constitutional rights such as the plaintiffs. In addition to the notice in the foregoing paragraph, the CITY is aware of unlawful searches and forces and warrantless entries or seizure by complaints documented by various agencies.[3]

---

[2] These are some of the examples of inadequate training by the CITY which has put City on notice and other cases exist which would be fully discovered over the period of discovery.

[3] ABUSE OF AUTHORITY- ENTRY OF PREMISES
https://projects.propublica.org/nypd-ccrb/allegations/abuse-of-authority-entry-of-premises
WRONGFUL SEARCH OF PREMISES
https://projects.propublica.org/nypd-ccrb/allegations/abuse-of-authority-search-of-premises?page=2
TIGHT HANDCUFFS, POINTING GUNS WITHOUT REASONS
https://projects.propublica.org/nypd-ccrb/

WHEREFORE, Plaintiffs demand judgment and pray for the following relief, jointly and severally, against the defendants:

(A) Full and fair compensatory damages in an amount Five Hundred Thousand Dollars for each and every cause of action for each plaintiff against defendants (individually or collectively) or as determined by a jury:

(B) Punitive damages in an amount to be determined by a jury:

(C) Reasonable attorney's fees and the costs, expenses and disbursements of the action; and

(D) Such other and further relief as appears just and proper.

Dated: New York, New York
       June 5, 2024

                      Respectfully,

                      /s Vik Pawar
                      VIK PAWAR, ESQ.
                      Attorneys for Plaintiff
                      20 Vesey Street, Suite 1410
                      New York, New York 10007
                      Tel. No.: (212) 571-0805